Judge Lagoa, Judge Choflat, and I are happy to welcome you to the third day of our panel sitting here in sunny Jacksonville. You know our lighting system. When the yellow light goes on, that means that your time is starting to draw to a close, so you can begin to wrap up. If we take you beyond the red light, don't worry about it. Just keep on going. And with that, we'll begin with our first case, number 22-12013, United States v. B'Quan Ferguson. Mr. Braunston. Before you start, Mr. Braunston, I know you're court-appointed for Mr. Ferguson. We want to thank you on his behalf and on ours, too, for taking on the case and doing this service to him. We appreciate it. Thank you, Your Honor. Curtis Braunston on behalf of B'Quan Ferguson, appellant in this case. The question that brings us here today, Your Honors, is whether official code of Georgia annotated 16-10-32, the attempted murder or threatening of a witness in official proceedings, is indeed a violent felony for the purposes of sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. 924E. So first, we look to the statutes at issue. 924E, the statute on Armed Career Criminal Act, it requires that in order for Armed Career Criminal Act to be applicable, that there must be three prior convictions of either serious drug offenses or of violent felonies. Obviously, the issue here today is a violent felony, whether or not that code section is indeed a violent felony. A violent felony is defined as any felony that has an element of use, attempted use, or threatened use of physical force against another in the alternative burglary, arson, or crime involving explosives. Once again, that's not at issue here today. Then we take a look at OCGA 16-10-32. Now, this statute is laid out in a way where it's either A or B, A being the attempted murder of a witness, and that's not at issue here today, Your Honors, and then B being any person who threatens or causes physical or economic harm to a witness with the intent to prevent, delay, hinder, or dissuade from attending and testifying in oral proceeding. Can I ask you, can I ask you a structural question? Absolutely, Your Honor. I'll ask Mr. Mitchell the same, and this doesn't bear on the ultimate validity or The statute itself as a whole, do you think it's divisible into three portions? I do, Your Honor. Into three clauses? I do, Your Honor, and I believe the state is, or the state rather, the government has conceded to the same. Right, so you've got the first clause, which is threatens or causes physical or economic harm to another person, you've got clause number two, which is threatens to damage or damages the property of another person, you know, so forth and so on, and clause number three, attempts to cause physical or economic harm to another person, and then all of them with the intent to hinder, delay, prevent, or dissuade any person from testifying. Those are three, you agree that those, each of those constituent clauses are elements? I do. Well, Your Honor, I would argue that they're means, and the way I come . . . The entire thing is means? Well, no, I would argue that the elements of the crime, the pivotal element in this statute is the victim itself. So many of these crimes are contemplated in other statutes under the official code of Georgia. However, this one's . . . . . . with threatening to damage or damaging the property of another person. Yes, Your Honor. It doesn't go to the bodily integrity of an individual's self-being. You think that's a means, too, that's not a distinct element, although it doesn't bear on your argument here today? Yes, Your Honor. The reason that I've come to the conclusion that I believe that they are means is because without the victim itself, each and every one of these lists of ways that this statute can be violated are contemplated under other statutes. The key element in this case is who the victim is. Okay. I do . . . Go ahead. I do agree that they should be broken down into clauses. We're dealing here with clause number one, right? Yes, Your Honor. Or A, whatever you want to call it, which is . . . . . . which would be any person who threatens or causes physical or economic harm. One other person, so forth and so on. Correct, Your Honor. Okay. So when we have a case like this and we see the statute is agreeably broad and divisible, as the parties have stated, so we then turn to a Taylor analysis of the statute. And once we've established the categorical approach that we satisfied that the statute is indeed broad, then we have to look at certain documents and records that are judicially noticeable to help us make the determination of whether or not what was charged here should satisfy 924E. Now, in this case, we have an indictment, we have a signed plea agreement, and we have a sentencing order or a judgment. However, we do not have a plea colloquy, a transcript of the plea, so we're left with really what the indictment says. Now, the indictment simply charges that Mr. Ferguson threatened physical harm to Sylvester Harris with the intent to delay, prevent, hinder, and dissuade him from testifying. Now, the issue that Mr. Ferguson has with this is that physical harm encompasses such a wide array of behavior, much of which would be misdemeanors, but for who that victim is. So, for instance, this court recently, in 2020, assessed a similar statute in Georgia, which is 161137, which is terroristic threats and acts. That's U.S. v. Oliver 2020 case. Now, in that case, the court came to the conclusion that, indeed, terroristic threats does satisfy the requirements of the Armed Career Criminal Act to be applicable. There's some distinguishing factors, though, between the statute of terroristic threats and acts and the statute of threatening a witness, and those are that the behavior contemplated can be misdemeanors or felonies, and in Oliver, Mr. Oliver was charged with making a threat which suggested and contemplated the death of another, which is clearly a felony under 161137, pardon me. So, that distinguishing factor is why I came to the conclusion that the means by which are listed, as opposed to elements, under the threatening a witness, because there's a number of means. The defendant could have done anything from threaten to slap, to threaten to punch, to threaten to kill, and they would all be charged under the same subsection. I thought the argument that was made before the district court at sentencing was that the statute didn't qualify as a violent felony under the categorical approach because it encompassed both physical or economic harm, and economic harm doesn't match what Section 924 says about a violent felony. Yes, Your Honor. Did I misread the argument? No, you did not misread the argument, but over the course of time between that argument and today, I've further researched and developed my argument. Obviously, he wasn't charged via indictment with economic harm. If he was charged with economic harm, I don't think we would be here, but he's charged with physical harm, so then I think we need to look at what physical harm entails. Now, when the indictment only charges physical harm, we don't know if it would have otherwise been a misdemeanor. But the charging of the physical harm in the indictment is relevant, but it's not determinative. Some prosecutors charge specific fact-based offenses, and some prosecutors charge very generally, charging the language of the statute with no specifics. Yes, Your Honor. So it's important, it's relevant, but it's not determinative. You think it is? Well, I wouldn't say that it's necessarily determinative, Your Honor, but I think it's definitely relevant. The court in Mathis stated that, or Shepard, rather, citing Mathis, stated that if we look to those documents under a modified categorical approach and we get no answer, then we haven't given that determinative answer required out of Taylor. Now, I think now I'm confused about the arguments that you're pressing. Yes, Your Honor. Could you just summarize for me, like in a sentence or two, why this statute isn't a match under Section 924? The reason I believe it's not a match under Section 924E is that it is overly broad, one. And number two, it encompasses— Overly broad in what way? Overly broad in that it includes behavior conduct that would either be a misdemeanor or a felony in other cases. And since those records that I referenced don't indicate exactly what conduct Mr. Ferguson did to violate this crime, my argument is that it's insufficient to be used as a predicate for Armed Career Criminal Act. What's the other reason that it's overly broad? You said one of them was that it was either a felony, could have been either a felony or a misdemeanor. What's the second reason? So, that actually, you took me from my first reason to my second. My first reason was overly broad. My second reason is specifically that we don't have enough in the record to show how he violated. If we look back to terroristic threats or we look to an array of misdemeanor charges under the official code of Georgia, we see that he could have been charged with any of those. What triggered this case, 161032, is that the victim was essentially a protected class under the statute. The victim was a witness in an ongoing official proceeding. So, you are not making an argument based upon economic harm being a means in addition to physical harm, that those are not means? I may have misstated. That is part of my argument, Your Honor, is that those items are means by which he can violate the element of the crime, which is to prevent, dissuade, prevent a witness from appearing or testifying in official proceedings. Okay. Go right ahead. Okay. All right, thank you very much. We'll give you your full time for rebuttal. Mr. Stuchel. Good morning, Your Honor. It's James Stuchel for the United States. There are two sub-issues here, whether the statute is divisible and whether the statute for which he was convicted of violating entails the use of physical force. I understood my colleague to concede divisibility. If I were wrong about that, I'm happy to discuss it in further detail. He conceded divisibility as to the three different clauses. He didn't concede divisibility within each clause. Okay. You understand the difference? I do. This is very hard and very subtle, but he concedes that the statute in and of itself has three different constituent elements and is therefore divisible. So you've got threatens or causes physical or economic harm. That's one. You've got threatens to damage or damages the property of another person. That's two. Or attempts to cause physical or economic harm to another person. That's three. But he doesn't concede that within each clause there is divisibility. He says that within each clause what you have are means and not sub-elements. Yes, Your Honor. Your Honor, if we're going to discuss divisibility, I'd like to call the Court's attention to the exhibit I filed two days ago by a motion. I filed a motion for permission to use this exhibit at this argument, and the Court granted it. We have it. Sorry? We have it. We do have it. Fantastic. We granted the motion, so we've got it. Yes. Thank you. Okay. So then there are two essential elements of this statute. I've labeled them as paragraph capital A and B. A is the threat element, and B is the intent. The intent is not at issue here, as far as I understand. So we focused solely on what I've labeled as paragraph A. And as Your Honor pointed out, there are three different ways to fulfill that first essential element of threat. And I think my colleague agreed that we're dealing here with only what I've labeled as alternative number one. So that crime itself has three essential elements. The only one at issue here is physical or economic harm. So the question is, is that divisible? And the answer is 100% yes. In MAFIS, the Supreme Court gave us three ways to analyze a statute for divisibility. The first is the simple meaning of the plain text itself. So we just engage in ordinary reading that lawyers do every day and decide whether the alternative elements are describing the constituent parts of the legal definition. That plain reading stuff gets lawyers into all sorts of pickles every single day. Everybody arguing a statute says, I got the better argument on plain meaning. If all you do is look and all you do is read, you'll come around to my way of thinking. It doesn't really play out that way in practice. Okay, let's go in practice then as according to the Georgia appellate courts. No, no, I don't want to dissuade you from your argument. I'm just saying that relying on textual purity is not always the end all be all that people make it out to be. And that there are real big disagreements about what plain meaning means in a given case. So for example here, if the element is causing harm, why isn't physical or economic harm different means of committing the same harm? Because there's not a single example of any indictment anywhere that anyone has been able to identify in which the prosecution alleged only some generalized harm. The parties have identified three indictments under this statute and in every single one of them, the prosecution alleged either physical harm or economic harm. But there are more than three indictments under the statute. There are cases that predate the examples you've given. I'm talking of three indictments under subsection A1. No one's identified anyone in which – Shell Nut versus State, 657 Southeast 2nd, 611 Georgia Appellate, 2008. Affirming a conviction under your A1 for threatening or causing economic harm by burning the prospective witness's car. Yes, that indictment explicitly charges economic harm, not physical harm and not some generalized harm. So that is important and it's relevant but it's not determinative. Okay. Well, I've got two more. You disagree? You think that's determinative? That ends the game? That's one example of my – We have four – we have three indictments in the history according to what you've given us. In the history of Georgia, this Georgia statute and those three indictments, the way that three prosecutors decided to charge this crime is going to be determinative of whether or not this is divisible. We actually have seven. We have the one at issue here under Ferguson. That said, quote, Ferguson threatened physical harm to Sylvester Harris. Physical harm. In my motion to expand the record, which this court has carried with this case, I've attached three more Georgia court indictments under this same statute, each of which, again, alleged specifically physical harm. I haven't found a single one that alleges some generalized harm, which seems to be Your Honor's concern about this. No, it's not my concern. I'm just saying that prosecutors in different places charge crimes in very different ways. I'm not disagreeing with you that how prosecutors charge in Georgia is irrelevant. I agree with you that it's important and relevant. I'm just not sure that it carries the day. Well, how about in United States v. Mathis then? The court noted, quote, indictments often reflect the elements and so can reveal better than state law itself whether the statutory list is of elements or means, unquote. I agree. That's important. I just I'm not sure that it's determinative. OK, then I'll move back. I'll move on to Georgia appellate court decision, specifically state v. Brown. In that case, the defendant challenged the sufficiency of his indictment under this same statute. And the court first laid out the standard it had to meet, which is that the indictment had to allege all the elements of the offense. It had to apprise the defendant of exactly what he must be prepared to meet at trial, and it must be perfect in form. And in that case, the indictment alleged that Brown threatened persons with economic harm. The Georgia Supreme Court upheld that indictment as valid. That's an implicit finding that the allegation of only economic harm is an essential element, perfect in form, that adequately informs the defendant of what he must be prepared to meet. If that's not an element, I don't know what is. Your Honor, to get back to the statutory text, I can point to four different examples in which this court has held that a much more complicated statute with many more alternatives that can even be much more easily conflated is nevertheless divisible. I'll start with SPAHO, S-P-A-H-O. That case involved the Florida statute banning distribution of controlled substances. That statute contains six alternatives, sale, delivery, manufacture, or possession with intent to do either of those three things. So there's six different alternatives, and the issue was whether those are elements or means. And this court just simply read the statute and said there are obviously elements. We have cases that say almost exactly the opposite, too. Howard and Cintron on different ways to violate a drug possession slash drug trafficking statute, calling them means and not elements. And then let's turn to United States v. Gundy, one of which I'm intimately familiar. The issue there was whether Georgia's statute criminalizing burglary was divisible. That statute contains, by my count, 12 different alternative clauses, some separated by commas, some by semicolons, that overlap in very obvious ways. For example, in the Georgia burglary statute, it says burglary applies to a building, vehicle, railroad car, watercraft, aircraft, or any room or subdivision thereof. That's many categories, and they overlap. This court nevertheless held that the statute was divisible on its face by the plain text. Now let's compare that to the statute at issue here. There's only two alternatives. It's either physical harm or economic harm. There's far fewer alternatives than in these other cases I've just described, and the difference between the two alternatives is night and day. Physical harm and economic harm, never the twain shall meet. But in these other cases I've discussed, the alternatives were much more closely related, interrelated, even overlapping. The court nevertheless held the statute divisible. They can meet, I guess, if someone does physical harm and economic harm simultaneously. You could be charged with both. You could be charged with both, yeah. I think they would still be separate crimes. Those crimes might merge under Georgia law at sentencing, but that doesn't change the divisibility analysis. So, Your Honors, I still maintain this statute is plainly divisible under all three modes of analysis mandated by Mathis. Again, my fundamental point is if the statute were real, if these were really just means, wouldn't there be at least one example in which some prosecutor somewhere charged generalized harm rather than either physical or economic? Furthermore, in Mathis, back to the statutory analysis, Mathis gave us two examples of when a statute by its plaintext might establish means. And one is when it uses a broad umbrella term such as the term, quote, premises for burglary. That wouldn't specify whether it was a building, a structure, a dwelling place. So that would mean it was only means and, therefore, indivisible. That's not what we have here, not even close. The second way under Mathis would be if the statute contained a non-exhaustive list of elements that ends with a word such as includes or similar place. For example, if it barred illegal possession of a weapon, the statute might say a gun, firearm, or other similar weapon. That would be indivisible and establish mere means. But, again, there's nothing like that in this statute. So if there are no further questions regarding divisibility, then the final question then is whether Ferguson's conviction for threatening physical harm has as an element, means that he was convicted of directly or indirectly causing physical pain or injury. So I'll concede that we don't have a Georgia Supreme Court case directly on point as interpreting the key phrase physical harm in this particular statute. But we have the next best thing. We have the Georgia courts interpreting that exact same key phrase, physical harm, in two other statutes. The first one is the Georgia statute criminalizing simple assault. There I've cited four cases from the Georgia Court of Appeals that interpret physical harm in that statute to mean the intentional infliction of physical pain or injury. That's the key ruling because then in State v. Randall, the Georgia Supreme Court addressed the meaning of that same key phrase, physical harm, in a different statute. That's the Georgia statute requiring sex offender registration. The court first acknowledged that the statute itself didn't define the phrase. So its analysis first consulted dictionaries and then the definition the courts had given it in another criminal statute, particularly simple assault. So the Supreme Court then adopted the same definition of physical harm from the simple assault statute and imported it into the same phrase as used in the Georgia sex offender registration statute. Furthermore, as if that weren't enough, this court has twice ruled in Talamante's and Hernandez that a conviction for causing physical harm under Georgia simple assault qualifies as a crime of violence under the Immigration and Naturalization Act. Although the INA defines it as a crime of violence, it's the exact same definition that the ACCA uses for violent felony, particularly has as an element the use, attempted use, or threatened use of physical force against the person. I don't think anybody is, well, I shouldn't speak for anybody else, but I don't think anybody's denying that an offense that involves the threatening or causing of physical harm to another generally qualifies as a violent felony under the Armed Career Criminal Act. The question is whether or not this statute is divisible so that you drop to the modified categorical approach and get to the point where you want it to be. I'm glad Your Honor agrees with me on the second point, because that's actually the crux of his brief, if you read it. He spends all his time on disputing that his conviction for physical harm might have entailed mere offensive touching. That's incorrect. That's why I just addressed all. No, I understand. Does the court have any other questions or concerns about any other aspect of the case? It doesn't look like it. Thank you. Thank you very much, Mr. Tuchel. We appreciate it. Your Honor, I'd like to respond to a couple of things just stated by Govlin. So, he indicated there's two things to look at under Mathis, a broad umbrella, and I would argue that the broad umbrella approach of reading this statute . . . You've got to pull that mic down. I apologize, Your Honor. That in looking at this statute under a broad umbrella, I would argue economic harm and physical harm are both broad umbrellas. Either one could involve an array of behaviors, means, if you will, to determine whether or not their conduct has indeed inflicted economic or physical harm on the victim. Similarly, non-exhaustive lists. Now, this statute doesn't lay out 20 different ways to violate the statute, but nonetheless, you have two umbrella statements. One with physical harm and one with economic harm. As to Mathis . . . You know, if the court gets to the point where we are looking at this through a modified categorical approach, I still believe that the appellant has an argument that this is not inherently a violent felony and that the elements of the crime, as I stated before, are more focused on who the victim is rather than what act he performed. An offensive . . . you know, to use your hypothetical, an offensive touching doesn't constitute physical harm under Georgia law. To go back . . . Because an offensive touching doesn't require harm. You're right, it doesn't, Your Honor, but the government's argument is they're using simple battery and the definition derived from simple battery, OCGA 16.5-23, to define physical harm and say even a simple battery does constitute physical harm. So, then they cite two other cases where, once again . . . cite the correct case, Telemontes, Enriquez, and Hernandez, where, once again, they cite to the statute of simple battery under Georgia law and say that this is a crime of violence. So, if simple battery is a crime of violence, why don't we bring a simple battery conviction into an ACCA? Because it's not a violent felony. So, under a modified categorical approach, if we get to that point, my concern is that there is elements or there is means by which this crime can be committed that under any other circumstances would be one of several different misdemeanors. Simple assault, simple battery, terroristic threats, etc. There was two other cases cited, or two other statutes rather. One of them was 1710-6.2. That is a punitive section of the code for sex offender registry and punishment for violation of sex offender registry. And in that, the term physical harm was explained that evidence that the underlying sexual offense involved unwanted touching did not create a presumption of intentional physical harm. And that gets us back to, if we are looking at this from a modified categorical approach, and we look at those judicially noticeable documents, we simply don't have any information about what he did. We don't have any information about what Mr. Ferguson did to get himself indicted under this code section. It could have been anything. And I think without more particularized facts put into a charging document, or in the alternative, a factual basis given in a plea colloquy, it would be an injustice to sentence him under the ACCA. The pre-sentence investigation report doesn't provide any information on that? It does not, Your Honor. And both myself and the government, through AUSA, Darren Hubbard, and the probation officer, all three of us made significant efforts to recover a plea transcript, and none of us could find one. I went so far as to go to a judge that I know personally who was the signing judge on the sentencing order, and we were unable to recover that. All right. Thank you both very much. Thank you, Your Honor.